ANN BIRMINGHAM SCHEEL, Acting United States Attorney
LON R. LEAVITT, Assistant United States Attorney
(Utah Bar No. 11245)
Two Renaissance Square,
40 North Central Ave., Suite 1200
Phoenix, Arizona 85004-4408
T: (602) 514-7734 / F: (602) 514-7760
Lon.R.Leavitt@usdoj.gov
IGNACIA S. MORENO, Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division
JASON T. BARBEAU, Trial Attorney
(D.C. Bar No. 468200)
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Washington, D.C.  20044
T: (202) 616-8908 / F: (202) 616-6584
jason.barbeau@usdoj.gov
*Attorneys for Plaintiff United States of America*

TOM HORNE, Arizona Attorney General
LINDA POLLOCK, Assistant Attorney General
1275 West Washington Street
Phoenix, Arizona 85007
T: (602) 542-8566 / F: (602) 542-4085
linda.pollock@azag.gov
*Attorneys for Plaintiff State of Arizona*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

_____

|  |  |
|---|---|
| United States of America; and State of Arizona, | ) ) ) Case No. CV-12-0307-TUC-CKJ (HCE) |
| Plaintiffs, | ) ) |
| v. | ) |
| Freeport-McMoRan Corporation; and Freeport-McMoRan Morenci Inc., | ) ) **CONSENT DECREE** |
| Defendants. | ) ) |

_____)

## Table of Contents

I.      BACKGROUND ............................................................................................1

II.     JURISDICTION AND VENUE ..................................................................6

III.    PARTIES BOUND .......................................................................................6

IV.     DEFINITIONS .............................................................................................6

V.      STATEMENT OF PURPOSE ...................................................................11

VI.     PAYMENT BY DEFENDANTS................................................................11

VII.    TRUSTEE-SPONSORED NATURAL RESOURCE

        RESTORATION PROJECTS ....................................................................14

VIII.   COVENANTS NOT TO SUE BY THE UNITED STATES

        AND THE STATE......................................................................................16

IX.      RESERVATION OF RIGHTS BY THE UNITED STATES

         AND THE STATE .....................................................................................17

X.      COVENANTS BY DEFENDANTS ...........................................................20

XI.     EFFECT OF SETTLEMENT - CONTRIBUTION PROTECTION.....................21

XII.    NOTICES ...................................................................................................22

XIII.   APPENDICES.............................................................................................24

XIV.    EFFECTIVE DATE AND RETENTION OF JURISDICTION ...........................24

XV.     CONSENT DECREE MODIFICATIONS.................................................24

XVI.    LODGING AND OPPORTUNITY FOR PUBLIC COMMENT .........................25

XVII.   SIGNATORIES / SERVICE .....................................................................25

XVIII.  FINAL JUDGMENT ..................................................................................26

i

SIGNATURE PAGES

APPENDIX A – Morenci Mine Site Vicinity Map

APPENDIX B – Morenci Mine Site Map

This Consent Decree is made and entered into by and among (i) the United States of America ("United States"), on behalf of the United States Department of the Interior ("DOI"); (ii) the State of Arizona ("State"), acting through the Arizona Attorney General on behalf of the Director of the Arizona Department of Environmental Quality and Trustee for Natural Resources for the State of Arizona; and (iii) Freeport-McMoRan Corporation and Freeport-McMoRan Morenci Inc. ("Defendants").

## I. BACKGROUND

A.     The United States on behalf of the Secretary of the DOI, and the State, acting through the Arizona Trustee for Natural Resources, have filed a Complaint along with this Consent Decree asserting a claim under Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9607.  Plaintiffs seek damages for injury to, destruction of, or loss of natural resources belonging to, managed by, or controlled by the United States or the State, resulting from releases of hazardous substances at and from the Morenci Mine Site ("Site" or "Mine Site"), including the costs of assessing such injury, destruction, or loss.

B.     The Complaint filed by Plaintiffs alleges that natural resources, including, but not limited to, surface waters, terrestrial habitat and terrestrial receptors, and migratory birds, have been injured as a result of releases of hazardous substances at and from the Site.  As a result thereof, the public has suffered the loss of natural resources and associated services, and Plaintiffs have incurred costs in connection with the assessment of such injuries, destruction, or losses.

1

C.     The Complaint further alleges that Defendants are liable for damages for injury to, destruction of, or loss of natural resources because they are or were owners or operators of one or more facilities from which such releases occurred or were owners or operators of one or more such facilities at a time hazardous substances were disposed of at such facilities.

D.     By entering into this Consent Decree and undertaking the obligations imposed under its terms, Defendants do not expressly, or by implication, make any admissions of liability, including but not limited to liability for injury to, destruction or loss of natural resources as alleged in the Complaint, and Defendants do not admit any of the allegations of the Complaint, except as expressly stated in this Consent Decree.

E.     <u>Morenci Mine:</u>  The Morenci Mine complex currently is owned and operated by Freeport-McMoRan Morenci Inc.  Freeport-McMoRan Corporation, formerly known as Phelps Dodge Corporation, is the parent corporation of Freeport-McMoRan Morenci Inc.

1.     The Morenci Mine Site is located in southeastern Arizona near the towns of Clifton and Morenci, approximately 45 miles northeast of Safford, Arizona on State Highway 191, as shown on the maps attached as Appendices A and B.

2.     The Morenci Mine Site includes a large complex of open pits, numerous leach rock stockpiles and development rock stockpiles, beneficiation plants, tailings impoundments, and uncovered ponds.  Processes include crush and convey systems, an agglomerating facility, four solution-extraction ("SX") plants, three electrowinning tank houses ("EW"), and a copper concentrator facility.  The tailings

2

impoundments and most of the ore and solution beneficiation facilities are located in the southern part of the Site near the San Francisco River.  Five smelters historically were operated at the Site, as well as historic underground mine workings and surface openings. Surface flows from the Site drain into the San Francisco River and Gila River watersheds.

3.      The Complaint alleges that, once inactive, mine tailings exposed to air and precipitation release hazardous substances on the surface of the tailings or that can percolate through the tailings to ground water.  These substances allegedly include, but are not limited to, sulfuric acid and various dissolved metals (depending upon the mineral composition of the tailings) such as arsenic, beryllium, cadmium, chromium, cobalt, copper, lead, manganese, mercury, nickel, selenium, and zinc.  The Complaint further alleges that windblown tailings have been deposited off-site according to prevailing wind direction and speed.

F.      Based on historical studies and additional assessment work, the Trustees have determined that releases of hazardous substances at or from the Morenci Mine Site have occurred and allege that such releases have caused injuries to natural resources at and in the vicinity of the Site including but not limited to injuries to surface water, sediments, soils, terrestrial habitats, and terrestrial receptors.  In addition, precipitation ponded on the inactive tailings creates a surface water solution of high acidity and high levels of metals that has caused death and other injuries to migratory birds through exposure and ingestion.

G.      The Complaint alleges that Defendants are liable for damages for injury to,

3

destruction of, or loss of natural resources resulting from the release of hazardous substances at or from the Site.

H.      Pursuant to Executive Order 12580 and the National Contingency Plan, 40 C.F.R. Part 300, the Secretary of the DOI has been delegated authority to act as a Federal Trustee for natural resources managed by the DOI and injured by the release of hazardous substances at or from the Site.

I.      The United States, through DOI, is authorized to seek natural resource damages and related costs under CERCLA, 42 U.S.C. §§ 9601 *et seq.*

J.      The State is authorized to seek natural resource damages and related costs under CERCLA, 42 U.S.C. §§ 9601 *et seq.*

K.      The Director of the Arizona Department of Environmental Quality and Trustee for Natural Resources for the State of Arizona has been delegated authority to act as State Trustee for natural resources impacted by the release of hazardous substances at and from the Site.

L.      Through the Complaint, the Trustees bring claims for recovery of Natural Resource Damages (including recovery of natural resource damage assessment costs) against Defendants.

M.      The Trustees and Defendants have negotiated regarding the extent of and appropriate compensation for injuries to Natural Resources alleged in the Complaint. This settlement follows an investigation by the Trustees of alleged natural resource injuries related to the release of hazardous substances into the environment at and from the Site, due at least in part from acid rock drainage, process solutions, windblown

4

materials, wastes, non-waste materials, and from other areas, sources, and operations at and in the vicinity of the Site.  The Trustees have evaluated potential impacts to natural resources as defined in the DOI regulations at 43 C.F.R. § 11.14(z).  These included geological (e.g., terrestrial and riparian soils, aquatic sediments), biological (e.g., aquatic, riparian, and terrestrial ecosystems), and surface water resources, and the State Trustee evaluated ground water resources, as defined in the DOI regulations at 43 C.F.R. § 11.14.  In particular, the Trustees reviewed possible injuries at the Site and selected areas at and appurtenant to the Site where historical information suggested releases could have injured natural resources.

N.     The Parties recognize that significant improvements have been made on or at the Site, and therefore adopted reasonable conservative assumptions in assessing natural resource injuries and associated damages that would assure the public is appropriately compensated for such injury and loss.  Among those assumptions is that some hazardous substances may continue to be released or to migrate at and from the Site into the future.

O.     This Consent Decree represents a settlement of a contested matter, and neither payment nor the acceptance of any consideration represents an admission of liability or responsibility by any Party.  The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated in good faith, that implementation of this Consent Decree will expedite the restoration of allegedly injured natural resources and will avoid prolonged and complicated litigation among the Parties, and that this Consent Decree is fair, reasonable, and in the public

interest.

THEREFORE, it is ORDERED, ADJUDGED, AND DECREED as follows:

## II.  JURISDICTION AND VENUE

1.     The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345 and Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613.  The Court also has personal jurisdiction over Defendants. Venue is proper under CERCLA, 42 U.S.C. §§ 9601 *et seq.*  Defendants consent to this Court's jurisdiction, and to venue in this District, as to the underlying proceeding giving rise to this Consent Decree, to enforce the terms of this Consent Decree and any subsequent enforcement order stemming from this Consent Decree.  In any action to enforce this Consent Decree, Defendants shall not challenge:  (i) that Plaintiffs have stated a claim upon which relief could be granted, (ii) the terms of this Consent Decree, and (iii) this Court's jurisdiction to enter and enforce this Consent Decree**.**

## III.  PARTIES BOUND

2.     This Consent Decree applies to and is binding upon the United States, the State, and Defendants and their respective successors and assigns.  Any change in ownership or corporate status of Defendants, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter Defendants' responsibilities under this Consent Decree.

## IV.  DEFINITIONS

3.     Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA, or in regulations promulgated under CERCLA, shall

6

have the meaning assigned to them in CERCLA or such regulations.  Whenever terms listed below are used in this Consent Decree or its appendices, the following definitions shall apply:

(a)     "Affiliate" of an entity means another entity that directly or indirectly (through one or more intermediaries) controls or is controlled by the first entity, or that is controlled by the same entity that controls the first entity.

(b)     "CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601 *et seq.*

(c)     "Consent Decree" means this Consent Decree.

(d)     "Day" means a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than Saturday, Sunday, or a federal holiday.  In computing any period of time under this Consent Decree, when the last day falls on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

(e)     "Defendants" means Freeport-McMoRan Corporation and Freeport-McMoRan Morenci Inc.

(f)     "DOI" means the United States Department of the Interior and any successor departments or agencies.

(g)     "Effective Date" means the effective date of this Consent Decree as provided by Section XIV (Effective Date and Retention of Jurisdiction).

(h)     "Federal Trustee" means DOI.

(j)     "Future Costs" means any and all direct and indirect costs that the

7

Trustees, the United States, or the State have incurred or will incur after the entry of the Consent Decree in connection with planning, implementing, monitoring, and completing the restoration activity or activities funded through this Consent Decree, or overseeing or enforcing this Consent Decree. Future Costs include administrative and other costs or expenses associated with providing for public participation incident to or in support of the restoration process.

(k)     "Interest" means interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

(l)     "Natural Resource" or "Natural Resources" means land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources, belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States or the State or in which the United States or the State have any legally cognizable interest.

(m)     "Natural Resource Damages," for the purposes of this Consent Decree, means any damages recoverable by the United States or the State for injury to, destruction of, loss of, loss of use of, or impairment of Natural Resources resulting from the release or threatened release or disposal or presence of hazardous substances at, from, or to the Site as of and prior to the entry of this Consent Decree, including, but not limited to: (i) the costs of assessing such injury, destruction, loss, loss of use, or impairment; (ii) the costs

8

of restoration, rehabilitation, or replacement of injured or lost Natural Resources or of acquisition of equivalent resources; (iii) the costs of identifying and planning such restoration, rehabilitation, replacement or acquisition activities; (iv) compensation for injury, destruction, loss, loss of use, or impairment of Natural Resources; and (v) each of the categories of recoverable damages described in 43 C.F.R. § 11.15.  "Natural Resource Damages" does not include any of the foregoing that may exist with respect to areas at or downstream from the point where the Gila River intersects the boundary of the San Carlos Apache Reservation.

(n)     "NRDAR Fund" means DOI's Natural Resource Damage Assessment and Restoration Fund.

(o)     "Paragraph" means a portion of this Consent Decree identified by an Arabic numeral or an upper case letter.

(p)     "Party" or "Parties" means the United States, the State and/or Defendants.

(q)     "Past Costs" means any and all direct and indirect costs incurred by the Trustees, by the United States, or the State prior to the entry of the Consent Decree in assessing the Natural Resources actually or potentially injured, destroyed, or lost as a result of alleged releases of hazardous substances at, from, or to the Site, in identifying and planning for restoration actions to compensate for such alleged injuries and losses, and in evaluating, assessing or settling potential claims against Defendants and others relating to such alleged injuries and losses.

(r)     "Section" means a portion of this Consent Decree identified by an

9

uppercase Roman numeral.

(s)   "Site" or "Mine Site" means the combination of lands, units, structures and facilities associated collectively with the Morenci Mine.  This includes the property located in southeastern Arizona near the towns of Clifton and Morenci, approximately 45 miles northeast of Safford, Arizona on State Highway 191, as shown on the maps attached as Appendices A and B.  The primary mining areas lie in west-central Greenlee County between Eagle Creek to the west and the San Francisco River to the East, with mining and ore processing operations located within Townships 3 South, Range 30 East, all or parts of sections 29-32; Township 3 South, Range 29 East, all or parts of Sections 13-15, 20-24, and 25-36 (excepting all of Section 30 and the west half of Section 31); Township 4 South, Range 30 East, all or parts of Sections 5-8, 18-19, and 30-31; Township 4 South, Range 29 East, all or parts of Sections 1-18, 20-29, and 32-36; Township 4 South, Range 28 East, all or parts of Sections 1-2 and 11-14; Township 5 South, Range 30 East, all or parts of Sections 6 and 7; and Township 5 South, Range 29 East, all or parts of Sections 1-5, 8-12 and 14-17, in Greenlee County, Arizona.

(t)   "State" means the State of Arizona, and its officers, departments, agencies and instrumentalities.

(u)   "Subparagraph" means a portion of this Consent Decree identified by a lower case letter or an Arabic numeral in parenthesis.

(v)   "Trustees" means DOI and the Trustee for Natural Resources for the State of Arizona.

(w)   "United States" means the United States of America, including all

10

of its departments, agencies and instrumentalities.

## V.  <u>STATEMENT OF PURPOSE</u>

4.      The mutual objectives of the Parties in entering into this Consent Decree are to:  (i) provide for the restoration, replacement, or acquisition of the equivalent of the Natural Resources allegedly injured, destroyed, or lost as a result of hazardous substances releases at and from the Site; (ii) reimburse natural resource damage assessment costs incurred by DOI; (iii) resolve Defendants' potential liability for Natural Resource Damages as provided herein; and (iv) avoid potentially costly and time-consuming litigation.

## VI.  <u>PAYMENT BY DEFENDANTS</u>

5.      <u>Prior Payments</u>.   Defendants have paid $842,483.80 to DOI for the cooperative, restoration-based natural resource damage assessment activities undertaken by DOI.

6.      <u>Payments to be made by Defendants</u>. Within thirty (30) days after the Effective Date, Defendants shall pay the sum of six million eight hundred thousand dollars ($6,800,000), as described below and include Defendants' Taxpayer identification number with each payment:

(a)      Past Costs:  To the United States Attorney's Office, District of Arizona, the sum of $98,138.70, directed to the United States DOI NRDAR Fund, as compensation for DOI Past Costs that Defendants have not already paid, either by wire transfer per wire instructions that may be obtained from that office, or as specified below:

11

United States Department of the Interior NRDAR Fund
Department of Interior, NBC/Division of Financial Management Services,
Branch of Accounting Operations, Mail Stop D-2777,
7401 W. Mansfield Avenue, Lakewood, CO 80235.
Account No. – 14X5198 (NRDAR)
Site name –Freeport-McMoRan – Morenci Mine Site, Arizona
Location of site – Greenlee County, AZ
Defendants – Freeport-McMoRan Corporation and Freeport-McMoRan
Morenci Inc.

(b)     Other Payments:   The balance after completing the payments

required by subparagraph (a), consisting of $6,701,861.30, to the United States DOI

NRDAR Fund, either by wire transfer or as specified below to be used by the Trustees to

plan and implement projects designed to restore, replace, and/or acquire the equivalent

of wildlife and wildlife habitat allegedly injured, destroyed, or lost as a result of the

release of hazardous substances at or from the Site:

United States Department of the Interior NRDAR Fund
Department of Interior, NBC/Division of Financial Management Services,
Branch of Accounting Operations, Mail Stop D-2777,
7401 W. Mansfield Avenue, Lakewood, CO 80235.
Account No. – 14X5198 (NRDAR)
Site name – Freeport-McMoRan – Morenci Mine Site, Arizona
Location of site – Greenlee County, AZ
Defendants – Freeport-McMoRan Corporation and Freeport-McMoRan
Morenci Inc.

Upon request by the Trustees, sums may be withdrawn from the DOI NRDAR Fund to

pay for the Trustee-sponsored, natural resource restoration activities described in

Section VII of the Consent Decree.

7.     Notice of Payment.  Upon making any payment under this Consent

Decree, Defendants shall send written notice that payment has been made to:

12

FOR THE UNITED STATES:
Chief, Environmental Enforcement Section
U.S. Department of Justice
DJ # 90-11-3-08069
P.O. Box 7611
Washington, DC 20044-7611

Department of the Interior
Natural Resource Damage Assessment and Restoration Program
Attn: Restoration Fund Manager 1849 C Street, NW
Mailstop 4449
Washington, DC 20240

United States Fish & Wildlife Service
NRDAR Coordinator
Region 2
Attn: Karen Cathey
P.O. Box 1306
Albuquerque, NM  87103

FOR THE STATE:

Henry Darwin, Director
Arizona Department of Environmental Quality
and Trustee for Natural Resources for the State of Arizona
1100 West Washington Street
Phoenix, Arizona 85007

with a copy to:
Lizette Morgan
Chief Financial Officer
Arizona Game and Fish Department
5000 W. Carefree Highway
Phoenix, Arizona 85086-5000

8.    <u>Remedies for Untimely or Inadequate Payment of Money or Performance of Other Obligations</u>.

(a)     Interest.  In the event any payment required by Paragraph 6 is not made when due, Defendants shall pay Interest on the unpaid balance commencing on the payment due date and accruing through the date of full payment.

(b)     Stipulated Penalties.  In addition to the Interest required to be paid under the preceding Subparagraph, if any payment required by Paragraph 6 is not made within 14 days after it is due, or if Defendants fail to perform any non-monetary duties or obligations under this Consent Decree, then Defendants shall also pay stipulated damages per day in the amounts specified below:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $1,000 | 1st through 14th day |
| $1,500 | 15th through 30th day |
| $2,000 | 31st day and beyond |

(c)     Payment of Interest and Stipulated Penalties.  Defendants must pay any Interest payments under Subparagraph 8(a) in the same manner and form as Defendants should have paid the overdue principal amount.  Defendants must pay any stipulated penalty payments under Subparagraph 8(b) in the manner and form that Defendants should have paid the principal amount in Paragraph 6.

(d)     The payment of stipulated penalties shall not alter in any way Defendants' other obligations required under this Consent Decree.

## VII.  TRUSTEE-SPONSORED NATURAL RESOURCE RESTORATION PROJECTS

9.     Management and Application of Funds.  All funds disbursed from

14

the DOI NRDAR Fund Account pursuant to Subparagraph 6(b) shall be used to pay for Future Costs and Trustee-sponsored natural resource restoration activities in accordance with this Consent Decree and applicable law.  All such funds shall be applied toward the costs of restoration, rehabilitation, or replacement of injured Natural Resources, and/or acquisition of equivalent resources, including but not limited to any administrative costs and expenses for, and incidental to, restoration, rehabilitation, replacement, and/or acquisition of equivalent resources planning, and any restoration, rehabilitation, replacement, and/or acquisition of equivalent resources undertaken.

10.      Restoration Planning.  The Trustees intend to prepare one or more separate Restoration Plans describing how the funds dedicated for Trustee-sponsored natural resource restoration efforts under this Section will be used.  As provided by 43 C.F.R. § 11.93, the Plan or Plans will identify how funds will be used for restoration, rehabilitation, replacement, or acquisition of equivalent resources.  The Plan or Plans may also identify how funds will be used to address services allegedly lost to the public until restoration, rehabilitation, replacement, and/or acquisition of equivalent resources is completed.  The Trustees intend to solicit public review and comment on the Restoration Plan or Plans and in no event will any project proceed without the public first receiving the opportunity to review the proposed project and submit comments on the proposal to the Trustees.

11.      The Trustees, acting through a Trustee Council, shall make decisions regarding any use or expenditure of funds in the DOI NRDAR Fund under this Section. Defendants shall not be entitled to dispute, in any forum or proceeding, any decision

15

relating to use of funds or restoration efforts under this Section, provided that

Defendants may exercise whatever rights they, or any of them, may have as a member

of the general public concerning such decisions, without reference to the terms of this

Consent Decree or the settlement negotiations that led to this Consent Decree but

without violating any term of this Consent Decree.

## VIII.  COVENANTS NOT TO SUE BY THE UNITED STATES AND THE STATE

12.     <u>Covenant by the United States</u>.  Except as specifically provided by

Paragraph 14 (General Reservations) and Paragraph 15 (Limitations on Covenant

Regarding Natural Resource Damages), the United States covenants not to sue or take

any civil or administrative action pursuant to CERCLA Section 107, 42 U.S.C. § 9607, or

Section 311(f)(4) & (5) of the Clean Water Act ("CWA"), 33 U.S.C. § 1321(f)(4) & (5),

or other statute or common law against Defendants for: a) Natural Resource Damages;

b) Past Costs; and c) Future Costs.  This covenant shall take effect upon receipt by the

DOI NRDAR Fund of Defendants' principal payment pursuant to Paragraph 6(b) of this

Consent Decree.  This covenant is conditioned upon Defendants' full and satisfactory

performance of their duties and obligations under this Consent Decree.  This covenant

extends only to Defendants and expressly does not extend to any other person or entity.

13.     <u>Covenant by the State</u>.  Except as specifically provided by Paragraph 14

(General Reservations) and Paragraph 15 (Limitations on Covenant Regarding Natural

Resource Damages), the State covenants not to sue or take any civil or administrative

action pursuant to CERCLA Section 107, 42 U.S.C. § 9607, Section 311(f)(4) & (5) of

the CWA, 33 U.S.C. § 1321(f)(4) & (5), similar State law, or other statute or common

16

law against Defendants for: a) Natural Resource Damages; b) Past Costs; and c) Future Costs.  This covenant is conditioned upon Defendants' full and satisfactory performance of their duties and obligations under this Consent Decree. This covenant extends only to Defendants and expressly does not extend to any other person or entity.

## IX.  RESERVATION OF RIGHTS BY THE UNITED STATES <u>AND THE STATE</u>

14.  <u>General Reservations</u>.  The United States and the State reserve, and this Consent Decree is without prejudice to, all rights against Defendants with respect to all matters not expressly included within Paragraph 12 (Covenant by the United States) and Paragraph 13 (Covenant by the State).  Notwithstanding any other provisions of this Consent Decree, the United States and the State reserve all rights against Defendants with respect to:

(a)    claims based on a failure by Defendants to meet a requirement or fulfill a duty or obligation of this Consent Decree;

(b)    liability for injunctive relief or administrative order enforcement under CERCLA Section 106, 42 U.S.C. § 9606, the CWA Section 311, 33 U.S.C. § 1321, or applicable state law;

(c)    liability under CERCLA Section 107(a)(4)(A), 42 U.S.C. § 9607(a)(4)(A), the CWA, Section 311, 33 U.S.C. § 1321, or applicable state law for the costs of removal or remedial actions by the United States, the State or an Indian tribe;

(d)    liability under CERCLA Section 107(a)(4)(D), 42 U.S.C.

17

§ 9607(a)(4)(D), for costs of any health assessment or health effects study carried out under 42 U.S.C. § 9604(i);

(e)      liability for any damages or costs incurred or to be incurred by the United States or by the State that are not within the definition of Natural Resource Damages, Past Costs or Future Costs;

(f)      liability for damages to Natural Resources resulting from releases of hazardous substances other than at or from the Site and occurring after the date of entry of this Consent Decree;

(g)      criminal liability;

(h)      liability arising from the past, present, or future disposal or release of a hazardous substance outside the Site;

(i)      Liability under federal or state laws governing regulatory environmental compliance.

15.      <u>Limitations on Covenant Regarding Natural Resource Damages</u>.

(a)      Notwithstanding any other provision of this Consent Decree, the United States and the State each separately reserves and retains the right to institute proceedings against Defendants in this action or in a new action to secure Natural Resource Damages including the costs of damage assessment for possible Natural Resource Damages relating to the Site and resulting from the release of hazardous substances at or from the Site where:  (1) any condition at the Site that was unknown to Trustees as of the entry of this Consent Decree is discovered and causes or contributes to injury to, destruction or loss of Natural Resources materially greater or materially

18

different from that known and assessed as of the entry of this Consent Decree; or (2) any information, unknown to the Trustees at the time of entry of this Consent Decree, is received by Trustees and the Trustees determine that this unknown information together with any other relevant information indicates that the damages to Natural Resources may be materially greater than assessed by the Trustees as of the entry of this Consent Decree; or (3) after completion of remedial investigation and feasibility study for the Site under CERCLA or under the State Water Quality Assurance Revolving Fund program (WQARF) or a corrective action under the State Hazardous Waste Management Act, (i) Defendants fail to perform timely any CERCLA or WQARF response action or corrective action selected or approved for the Site by the United States or the State; and (ii) such failure to perform or its untimely performance contributes to an injury to, destruction of, or loss of Natural Resources materially greater than or materially different from that assessed by the Trustees in this action.

(b)     An immaterial increase in the assessed size of injury when compared to the assessment based on the information within the knowledge of the Trustees as of the entry of this Consent Decree or an immaterial increase in the rate or quantity of release of hazardous substances compared to the rate or quantity of release as of when this Consent Decree was entered is not, standing alone, a basis for invoking the limitation on the covenant established by this Paragraph.

16.     While this Consent Decree requires Defendants to make a payment into a DOI account as specified in Paragraph 6(b) to be jointly administered by all Trustees, as between the Trustees each Trustee reserves its rights concerning its trustee status with

19

respect to specific trust resources.

## X.  **COVENANTS BY DEFENDANTS**

17.      Covenants by Defendants.  Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States and the State, or their respective contractors, agents, officials or employees, with respect to Natural Resource Damages covered by the covenants not to sue contained in Paragraphs 12 and 13 above, including but not limited to:

(a)      any direct or indirect claim for reimbursement of any payment for Natural Resource Damages from the Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, Section 311 of the CWA, 33 U.S.C. § 1321, A.R.S. § 49-296 of WQARF, or any other provision of law; and

(b)      any claim against the United States or the State pursuant to Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613, and Section 311 of the CWA, 33 U.S.C. § 1321, relating to Natural Resource Damages.  These covenants not to sue shall not apply in the event that the United States or the State brings a claim against Defendants pursuant to the reservations set forth in Paragraphs 14 or 15 above, but only to the extent and for the same matters, transactions, or occurrences as are raised in the claims asserted by the United States or the State pursuant to such reservations.  Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. §§ 9611, or 40 C.F.R. § 300.700(d).

## XI.  <u>EFFECT OF SETTLEMENT - CONTRIBUTION PROTECTION</u>

18.      Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. Each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action that each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

19.      The Parties agree, and by entering this Consent Decree this Court finds, that Defendants are entitled, as of the Effective Date of this Consent Decree, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and other federal or state laws, for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are Past Costs, Future Costs, and Natural Resource Damages.

20.      Defendants agree that, with respect to any suit or claim for contribution brought against them or any of them for matters related to this Consent Decree, Defendants shall notify the persons identified in Section XII (Notices) in writing within 30 days of service of the complaint or claim upon it.  In addition, Defendants shall notify the persons identified in Section XII (Notices) within 15 days of service or receipt of any motion for summary judgment (or within 5 business days of receipt if a response would be due in less than 15 days), and within 15 days of receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

21.      <u>Waiver of Claim-Splitting Defenses</u>.  In any subsequent administrative or

21

judicial proceeding initiated by the United States or the State for injunctive relief,

recovery of response costs or natural resource damages, or other relief relating to the

Site, Defendants shall not assert, and may not maintain, any defense or claim based upon

the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-

splitting, or other defenses based upon any contention that the claims raised by the

United States or the State in the subsequent proceeding were or should have been

brought in the instant case; provided, however, that nothing in this Paragraph affects the

enforceability of the Covenants Not to Sue by the United States and the State set forth in

Section VIII.

## XII.  **NOTICES**

22.        Whenever, under the terms of this Consent Decree, notice is required to be

given or a document is required to be sent by one Party to another, it shall be directed to

the individuals at the addresses specified below, unless those individuals or their

successors give notice of a change to the other Parties in writing.  Written notice as

specified in this Section shall constitute complete satisfaction of any written notice

requirement of the Consent Decree.

AS TO THE UNITED STATES:

        As to the Department of Justice:

        Chief, Environmental Enforcement Section
        Environment and Natural Resources Division
        United States Department of Justice
        DJ# 90-11-3-08069

        U.S. Mail Only               Overnight Mail Only
        P.O. Box 7611             601 D Street, N.W.

Washington, DC 20044-7611          ENRD Mailroom, Room 2121
                                   Washington, DC 20004

As to the Department of the Interior:

United States Fish & Wildlife Service
NRDAR Coordinator
Region 2
Attn: Karen Cathey
P.O. Box 1306
Albuquerque, NM 87103

Dori Richards
Office of the Solicitor
United States Department of the Interior
Regional Office, Southwest Region
505 Marquette Avenue NW
Suite 1800
Albuquerque, NM 87102

AS TO THE STATE:

Henry Darwin, Director
Arizona Department of Environmental Quality
and Trustee for Natural Resources for the State of Arizona
1100 West Washington Street
Phoenix, Arizona 85007

Linda Pollock, Assistant Attorney General
Arizona Attorney General's Office
1275 West Washington Street
Phoenix, Arizona 85007

AS TO DEFENDANTS:

Dalva L. Moellenberg
Gallagher & Kennedy, P.A.
2575 E. Camelback Road
Phoenix, Arizona 85016
Tel: (602) 530-8000
Fax: (602) 530-8500
dlm@gknet.com

23

Freeport-McMoRan Copper & Gold Inc.
Attn:  General Counsel
333 North Central Avenue
Phoenix, Arizona 85004
Tel: (602) 366-8114
Fax: (602) 453-1604

## XIII.  APPENDICES

23.      The following appendices are attached to and incorporated into this

Consent Decree:  "Appendix A" is a map depicting the Site vicinity; "Appendix B" is a

map depicting the Morenci Mine Site.

## XIV.  EFFECTIVE DATE AND RETENTION OF JURISDICTION

24.      This Consent Decree shall take effect upon entry by the Court.

25.      This Court shall retain jurisdiction to modify and enforce the terms and

conditions of this Consent Decree and to resolve disputes arising hereunder as may be

necessary or appropriate for the construction or execution of this Consent Decree.

## XV.  CONSENT DECREE MODIFICATIONS

26.      Any material modification of this Consent Decree shall be made by

agreement of the Parties to this Consent Decree and in writing, and shall not take effect

unless approved by the Court.  Any non-material modification of this Consent Decree

shall be made by agreement of the Parties to this Consent Decree and in writing, and

shall not take effect until filed with the Court.  Nothing in this Consent Decree shall be

deemed to alter the Court's power to enforce, supervise, or approve modifications to this

Consent Decree.

27.     The provisions of this Consent Decree are not severable.  The Parties' consent hereto is conditioned upon the entry of the Consent Decree in its entirety without modification, addition, or deletion except as agreed to by the Parties.

28.     Economic hardship or changed financial circumstances of Defendants shall not serve as a basis for modifications of this Consent Decree.

## XVI.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

29.     This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment.  The United States and the State reserve the right to withdraw or withhold their consent if comments regarding the Consent Decree disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate. Defendants consent to the entry of this Consent Decree in the form presented without further notice.  If for any reason the Court should decline to approve this Consent Decree in the form presented, or if approval and entry is subsequently vacated on appeal of such approval and entry, this Consent Decree is voidable at the sole discretion of any Party and the terms of this Consent Decree may not be used as evidence in any litigation among the Parties.

## XVII.  SIGNATORIES / SERVICE

30.     The undersigned representatives of Defendants, the United States, and the State each certify that he or she is fully authorized to enter into this Consent Decree and to execute and legally bind such Party to this Consent Decree.  This Consent Decree may be executed in multiple counterparts, each of which shall be deemed an original, but all of which, taken together, shall constitute one and the same instrument.

31.     Defendants hereby agree not to oppose entry of this Consent Decree (in the form presented) by this Court or to challenge any provision of this Consent Decree unless the United States or the State has notified Defendants in writing that it no longer supports entry of the Consent Decree.

32.     Defendants shall identify, on the attached signature pages, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of Defendants with respect to all matters arising under or relating to this Consent Decree.  Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4, Fed. R. Civ. P. and any applicable local rules of this Court, including but not limited to the requirements for service of a summons.

## XVIII.  FINAL JUDGMENT

33.     This Consent Decree and its appendices constitute the final, complete, and exclusive understanding among the Parties with respect to the settlement embodied in the Consent Decree.  The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

34.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, the State and Defendants.  The Court finds that there is no reason for delay and therefore enters this judgment as a final judgment under Rules 54 and 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

Dated this 28th day of June, 2012.

_____
Cindy K. Jorgenson
United States District Judge

1    THE UNDERSIGNED PARTIES enter into this Consent Decree in *United States & State*
2    *of Arizona v. Freeport-McMoRan Corporation, et al.*

3    **FOR THE UNITED STATES OF AMERICA:**

4

5    Date: _4/20/12_                     _IGNACIA S. MORENO_
6                                          IGNACIA S. MORENO
7                                          Assistant Attorney General
                                           United States Department of Justice
8                                          Environment and Natural Resources Division

9

10

11   Date: _4/20/2012_                   _Jason T. Barbeau_
12                                          JASON T. BARBEAU
                                           Trial Attorney (D.C. Bar No. 468200)
13                                          United States Department of Justice
14                                          Environmental Enforcement Section
                                           P.O. Box 7611 Ben Franklin Station
15                                          Washington, DC 20044
16                                          (202) 616-8908 (telephone)
                                           (202) 616-6584 (facsimile)
17                                          jason.barbeau@usdoj.gov

18
19                                          ANN BIRMINGHAM SCHEEL
                                           Acting United States Attorney
20

21
22                                          LON R. LEAVITT
                                           Assistant United States Attorney
23                                          (Utah Bar No. 11245)
                                           Two Renaissance Square,
24                                          40 North Central Ave., Suite 1200
                                           Phoenix, Arizona 85004
25                                          (602) 514-7734 (telephone)
26                                          (602) 514-7760 (facsimile)
                                           Lon.R.Leavitt@usdoj.gov
27

28

                                                                                    28

1   THE UNDERSIGNED PARTIES enter into this Consent Decree in *United States & State*
2   *of Arizona v. Freeport-McMoRan Corporation, et al.*

3   **FOR THE STATE OF ARIZONA:**

4

5
6   Date: 3/29/12

7   Henry Darwin, Director
    Arizona Department of Environmental Quality
8   and Trustee for Natural Resources for the State
    of Arizona
9   1100 West Washington Street
10  Phoenix, Arizona 85007
    Tel: (602) 771-2204
11

12

13  Date: 4/17/12
14

15  TOM HORNE
    Arizona Attorney General
16  LINDA POLLOCK
    Assistant Attorney General
17  1275 West Washington Street
    Phoenix, Arizona 85007
18  Tel: (602) 542-8566
19  Fax: (602) 542-4085
    linda.pollock@azag.gov
20

21

22

23

24

25

26

27

28

29

THE UNDERSIGNED PARTIES enter into this Consent Decree in *United States & State of Arizona v. Freeport-McMoRan Corporation, et al.*

**FOR FREEPORT-MCMORAN CORPORATION:**

Date: *April 2, 2012*

L. Richards McMillan II
Senior Vice President
333 North Central Avenue
Phoenix, Arizona 85004

**FOR FREEPORT-MCMORAN MORENCI INC.:**

Date: *April 2, 2012*

By L. Richards McMillan II
Senior Vice President
333 North Central Avenue
Phoenix, Arizona 85004

Designated Agent per Section XII:

Date: *April 3, 2012*

GALLAGHER & KENNEDY, P.A.
Dalva L. Moellenberg
Gallagher & Kennedy, P.A.
2575 E. Camelback Road
Phoenix, Arizona 85016
Tel: (602) 530-8000
Fax: (602) 530-8500
dlm@gknet.com
Attorneys for Freeport-McMoRan Corporation,
Freeport-McMoRan Morenci Inc.

30



Location of Morenci Mine in Southeastern Arizona

**Appendix A**



LEGEND:

☐ STORMWATER BOUNDARY

**DRAFT**

FREEPORT-MCMORAN COPPER & GOLD INC., MORENCI OPERATIONS, MORENCI, AZ

**MORENCI SWPP OVERLAY WITH TOPOGRAPHIC MAP**

**ARCADIS** | FIGURE 1

0      6,000      12,000 Feet

GRAPHIC SCALE

Appendix B